**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.  X:XX-XX-XXXX

RYDER TRUCK RENTAL, INC.,

      Plaintiff,

v.

CHANJE ENERGY, INC. and
FDG ELECTRIC VEHICLES
LIMITED,

      Defendants.

_____/

**<u>COMPLAINT</u>**

      Plaintiff, Ryder Truck Rental, Inc. ("Ryder"), brings this action against Defendants Chanje Energy, Inc. ("Chanje") and FDG Electric Vehicles Limited ("FDG"), collectively ("Defendants"), and alleges as follows:

      1.      This is an action by Ryder to recover damages from Defendants' failure to satisfy their payment obligations under two separate promissory notes, stemming from Defendants' failure to fulfill numerous obligations spanning multiple agreements between the Parties.  Ryder has expended enormous efforts to assist Defendants' companies in expanding their presence in the U.S. market, but after facing repeated nonperformance and unfulfilled commitments, Ryder cannot sit idly by and must recover its losses.

**<u>THE PARTIES</u>**

      2.      Plaintiff, Ryder, is a corporation organized and existing under the laws of the State

of Florida with its principal place of business at 11690 NW 105th Street, Miami, Florida 33178.

3.      Defendant, Chanje, is a corporation organized and existing under the laws of Delaware with its principal place of business at 1025 Rollins Road, Burlingame, California 94010.

4.      Defendant, FDG, is a limited liability company incorporated in Bermuda, organized and existing under the laws of Bermuda with its principal place of business at Rooms 3001-3005, 30th Floor, China Resources Building, 25 Harbour Road, Wanchai, Hong Kong.

5.      FDG is also the parent company of Chanje.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Ryder's claims under 28 U.S.C. §1332(a)(2) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and based on the diversity of the parties.  Each of the companies that are parties to this suit reside in different states:  Ryder is a resident of Florida, Chanje is a resident of both Delaware and California, and FDG is a resident of Bermuda and Hong Kong.

7.      This Court has personal jurisdiction over Defendants (i) because Defendants negotiated and entered into agreements in Florida, Ryder paid the Defendants from funds in Florida, and Ryder has managed material provisions of such agreements in Florida, and (ii) pursuant to Florida Statutes §§ 48.193(1)(a) and 48.193(2).

8.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida, and because the Defendants consented and submitted to the venue of any court in the State of Florida, agreeing not to challenge venue in any such court.

## FACTUAL ALLEGATIONS

9.      Ryder is a leading American transportation and logistics company that provides supply chain, dedicated transportation, and commercial fleet management solutions nationwide.

10.      Ryder leases trucks and other commercial vehicles to third parties; provides vehicle maintenance, and repair services to fleets of trucks and other commercial vehicles through its network of vehicle maintenance and repair service centers; and distributes vehicle parts through its parts distribution network.

11.      As one of the most iconic brands in America, Ryder enters into mutually beneficial business relationships with manufacturers, sellers, and distributors, in which Ryder assists those companies with marketing, leasing, sales, and servicing of the companies' vehicles, parts, and equipment.

12.      Ryder entered into such a relationship with Chanje and its parent company, FDG. Chanje manufactures, sells, and distributes electric vehicles together with the parts, accessories, and components for such vehicles.

### A.  The Vehicle Service and Parts Distribution Agreement

13.      On March 17, 2017, Ryder and Chanje entered into a Vehicle Service and Parts Distribution Agreement (the "Vehicle Agreement"), attached hereto as Exhibit A.

14.      Through the Vehicle Agreement, Ryder and Chanje contracted to exchange services and payment.  The Vehicle Agreement states:

> (a) Chanje will sell to Ryder Chanje Vehicles for lease or rental by Ryder; (b) Ryder will assist Chanje in the facilitation of the sale or lease of Chanje Vehicles by Chanje to third parties; (c) Chanje will sell Chanje Vehicle Parts to Ryder and Ryder will inventory and distribute Chanje Vehicle Parts for use in Chanje Vehicles; and (d) Ryder will perform Repair Services on Chanje Vehicles.

Ex. A at 1.

3

15.     The Vehicle Agreement details Ryder's Chanje-related services and operations, including parts distribution services, repair services, authorized uses of new Chanje vehicles purchased from Chanje, sales facilitation services, use of trademarks, and additional terms and conditions.  *See generally* Ex. A.

16.     The terms governing these services are set out in more detail in Exhibits A through F of the Vehicle Agreement.

17.     For example, Exhibit E of the Vehicle Agreement sets out the terms for Ryder's acquisition of new Chanje vehicles.  *See* Ex. A at E-2.  Exhibit E States that "[i]n order to acquire Chanje Vehicles from Chanje for the rental or leasing transactions that Ryder is authorized to engage in under this Agreement, Ryder will submit a purchase order in a format mutually agreed upon by the Parties (each, a 'Purchase Order')."  *Id.*  (emphasis in original).

18.     Chanje's warranties are also set out in the corresponding Exhibits.  Considering Exhibit E as the example again, it states warranties such as "Each Chanje Vehicle shall meet all product specifications (color, equipment, configuration, etc.) contained in the applicable Purchase Order and shall be delivered to Ryder without damage," and "Chanje warrants that physical delivery of each Chanje Vehicle (i) shall be rightful."  *Id.*

19.     The Vehicle Agreement also states specific requirements for insurance that each party must abide by:

> 12.1 Prior to the delivery of the first Chanje Vehicle into the United States, each Party will obtain and keep in force during the Term: (a) Commercial General Liability insurance (including bodily injury, property damage, personal injury and broad form contractual liability) in the following amounts: each occurrence - $1,000,000; general aggregate - $2,000,000; products and completed operations aggregate - $2,000,000; and personal and advertising injury - $1,000,000, and (b) Workers' Compensation insurance subject to statutory limits under the Applicable Laws of the state in which the Party operates. . . .
>
> 12.2 <u>Chanje Obligations.</u> Chanje will obtain and keep in force during the Term and

for one (1) year thereafter products liability insurance to cover the Chanje Vehicles, Chanje Vehicle Parts, and Chanje's obligations in connection with those materials in the following amounts: (a) each occurrence - $25,000,000 and (b) aggregate per year - $25,000,000. Ryder will be named as an additional insured to the foregoing General Liability policy with respect to the obligations set forth in this Agreement.

Ex. A at 20.

20.     The Vehicle Agreement mandates that, "Upon Ryder's request, Chanje shall provide Ryder with proof of all such insurance, redacted for proprietary information such as premiums, copies of all such policies, and evidence of the payment of the premiums therefor." *Id.*

21.     The parent company, FDG, subsequently entered into a Joinder Agreement alongside Ryder and Chanje, "for the purpose of adding FDG as a party to the Vehicle Service and Parts Distribution Agreement." Joinder Agreement (Jan. 7, 2020), attached hereto as Exhibit B. Therefore FDG is considered a party to the Vehicle Agreement in the same manner as Chanje.

**B.  The Overpayment of the 2017 Purchase Order**

22.     The first Purchase Order connected to the Vehicle Agreement was dated June 26, 2017. *See* Purchase Order (June 26, 2017, referred to herein as the "2017 Purchase Order"), attached hereto as Exhibit C, at 3 ("The terms and conditions of the Vehicle Service and Parts Distribution Agreement dated March 17, 2017 by and between Ryder Truck Rental, Inc. and Chanje Energy, Inc. (the 'Agreement') shall govern the purchase of vehicles pursuant to the attached PO.").

23.     Via the 2017 Purchase Order, Ryder agreed to purchase a total of 125 vehicles from Chanje.

24.     Specifically, the 2017 Purchase Order required Ryder to pay Chanje an initial deposit of $35,000 per vehicle (the "initial deposit") upon execution of the Purchase Order and a remaining balance of $10,000 per vehicle upon delivery (the "remaining balance payment"). *See id.* at 1.

25.     On June 26, 2017, Ryder made an initial deposit in the amount of **$4,375,000** for

5

all **125 Chanje vehicles** ordered in the Purchase Order.  This amount included the $35,000 initial deposit per vehicle, as described in the Purchase Order.  *See id.*

26.     By December 2017, only **22** Chanje vehicles had been delivered.  Pursuant to the Purchase Order, Ryder was required to remit the remaining $10,000 balance payment for those 22 vehicles.

27.     On December 7, 2017, Ryder made a payment to Chanje for the 22 vehicles that had been delivered, but did so in the mistaken amount of $45,000 per vehicle (the entire cost of the vehicle), rather than the remaining balance due of $10,000 per vehicle for the 22 vehicles actually delivered, as set out in the Purchase Order.

28.      This mistake resulted in an overpayment of **$35,000 per vehicle** for the **22** vehicles that had been delivered, amounting in **a total overpayment of $770,000** (the "Overpayment Amount").  Chanje deposited the funds and has not returned the overpayment.

29.     Since March 2018, Ryder has made repeated requests that Chanje reimburse the Overpayment Amount, but Chanje has advised Ryder that it does not have the cash available to reimburse Ryder.

30.     Chanje has not delivered the remaining 100 vehicles ordered and for which Ryder paid the $35,000 deposit for each.

31.     After numerous unsuccessful attempts to obtain reimbursement of the Overpayment Amount, Ryder sent Defendants a demand letter on October 4, 2019, requiring them to reimburse Ryder for the Overpayment Amount for the 22 vehicles, and reserving the right to commence legal action to recover it.

32.     At all times, Defendants have acknowledged that the amount demanded by Ryder was an overpayment and must be reimbursed.

**C. Failure to Deliver the Remaining 100 Vehicles on the 2017 Purchase Order And Refund for the Initial Deposit for Those 100 Vehicles**

33.     After the delivery of the **22** vehicles, for which Ryder *overpaid*, Chanje only delivered **3** more vehicles.

34.     That is, out of the 125 vehicles that Ryder ordered and paid a deposit for according to the Purchase Order, *see supra* Paragraph 25, Ryder only received **25** out of the **125** vehicles it submitted a deposit for in the 2017 Purchase Order; 100 vehicles have not been delivered.

35.     Chanje advised that it could not meet its obligation to deliver the remaining **100** vehicles that Ryder paid a deposit for.

36.      Following Chanje's failure to perform, Ryder terminated the 2017 Purchase Order with respect to the remaining **100** vehicles that had not been delivered.

37.     However, because Ryder had already paid the initial deposit of $35,000/vehicle, totaling $4,375,000 for *all 125* of the vehicles ordered, the deposit for the 100 undelivered vehicles should have been returned to Ryder.

38.     The deposit for those 100 undelivered vehicles was $3,500,000.  Therefore, Ryder is entitled to a full refund of $3,500,000 for those 100 undelivered vehicles (the "$3.5M Termination Reimbursement Amount").

39.     Ryder has repeatedly demanded the return of the $3.5M Termination Reimbursement Amount, and Defendants have acknowledged the necessity of that reimbursement through e-mails and phone conversations, but have not refunded Ryder.

**D. Two Promissory Notes and an Accompanying Side Letter Have Been Breached**

40.     In recognition of Chanje's indebtedness to Ryder of approximately $4,270,000 (the $770,000 Overpayment Amount and $3.5M Termination Reimbursement Amount), Chanje entered into two promissory notes.

     i.     The Overpayment Promissory Note (Note #1)

41.     On February 28, 2019, Chanje as the borrower and FDG as the guarantor executed a Promissory Note unconditionally promising to pay Ryder the principal amount of $770,000. *See* Promissory Note (Feb. 28, 2019), attached hereto as Exhibit D (the "Overpayment Promissory Note").

42.     Since then, Defendants have paid $500,000 towards the Overpayment Promissory Note, leaving Defendants with an outstanding balance of $270,000 on the $770,000 note.

43.     Defendants have made no more payments that were due and missed the last payment date on the Overpayment Promissory Note. *See id.*

44.     Defendants' failure to make these payments is a direct breach of the obligations under the Note and establishes a default under the Overpayment Promissory Note.

45.     The Overpayment Promissory Note lists "Events of Default" in Section 6, and Defendants have satisfied at least two of these events, if not more, by their "Failure to Pay" as well as their "Breach of Covenants" contained in the Note. *Id.* at ¶ 6.

46.     The Overpayment Promissory Note states that the Note and "any claim, controversy, dispute, or cause of action" based upon the Note "shall be governed by the laws of the State of Florida." *Id.* at 5.

47.     The Overpayment Promissory Note also states that Chanje as the Borrower (and FDG as the Guarantor who guaranteed all obligations of Borrower under the Note) "irrevocably and unconditionally" agrees that any legal action, suit, or proceeding arising out of or relating to the Note may be "brought in the courts of the State of Florida" and "submits to the exclusive jurisdiction of any such court in any such action, suit, or proceeding." *Id.*

48.     The Overpayment Promissory Note further contains an indemnity provision.

Section 8.2 titled "Expenses" states: "The Borrower shall reimburse the Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees (including reasonable expenses and fees of its counsel) incurred by the Noteholder in connection with the transactions contemplated hereby including and the enforcement of the Noteholder's rights hereunder." *Id.* at 3. FDG, who guaranteed all obligations of Chanje as the Borrower, is responsible for such indemnity if Chanje does not comply.

49.     Defendants are obligated to pay Ryder damages for the breach and default of the Overpayment Promissory Note, and further must indemnify Ryder for any of the fees and costs associated with this action for relief and other attempts to obtain reimbursement.

ii.     <u>The $3.5M Promissory Note (Note #2) and Side Letter Agreement</u>

50.     Subsequently, on November 13, 2019, Chanje executed a second Promissory Note unconditionally promising to pay Ryder the principal amount of $3,500,000 for the return of the remainder of the deposit (the $3.5M Termination Reimbursement Amount), as a result of vehicles not being delivered under the Agreement that FDG joined, as being responsible for. *See* Promissory Note (Nov. 13, 2019), attached hereto as Exhibit E (the "$3.5M Promissory Note," and together with the Overpayment Promissory Note, the "Two Promissory Notes").

51.     The Defendants have not paid anything towards the $3.5M Promissory Note and have not satisfied their obligations under the Vehicle Service and Parts Distribution Agreement.

52.     The $3.5M Promissory Note lists "Events of Default" under Section 5, and Defendants have triggered an event of default by "fail[ing] to observe or perform any covenant, obligation, condition, or agreement contained in this Note." *Id.* at ¶ 5. Nor have they complied with their other contractual obligations.

53.     The $3.5M Promissory Note states that the Note and "any claim, controversy,

dispute, or cause of action" based upon the Note "shall be governed by the laws of the State of Florida." *Id.* at 5. Such a dispute would include the failure of the Defendants to live up to their obligations in the original agreement.

54.     The $3.5M Promissory Note also states that the Borrower "irrevocably and unconditionally" agrees that any legal action, suit, or proceeding arising out of or relating to the Note may be "brought in the courts of the State of Florida" and "submits to the exclusive jurisdiction of any such court in any such action, suit, or proceeding." *Id.*

55.     The $3.5M Promissory Note further contains an indemnity provision. Section 7.2 titled "Expenses" states: "The Borrower shall reimburse the Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees (including reasonable expenses and fees of its counsel) incurred by the Noteholder in connection with the transactions contemplated hereby including and the enforcement of the Noteholder's rights hereunder." *Id.* at 3.

56.     In conjunction with the $3.5M Promissory Note, Chanje signed a contemporaneous Side Letter Agreement, which imposed the conditions of payment for the Note. *See* Side Letter Agreement to $3.5 Million Promissory Note (Nov. 13, 2019), attached hereto as Exhibit F (the "Side Letter Agreement").

57.     The Side Letter Agreement specifically incorporated each of the agreements between the parties up until that time, including the Vehicle Agreement, the 2017 Purchase Order, and the $3.5M Promissory Note. *See id.*

58.     The Side Letter Agreement also served as the termination of the 2017 Purchase Order for the remaining 100 vehicles that were not delivered. *See id.*

59.     In the Side Letter Agreement, the parties agreed that Ryder is entitled to a full refund of $3,500,000, and further agreed that the refund should be made in the form of a credit deducted

from the purchase price of vehicles ordered in a separate purchase order involving leases to FedEx (note that the FedEx separate and newer purchase order was for the purchase of 900 vehicles that would be leased by FedEx).[1]

60.     The Side Letter Agreement stated that in the event that Chanje failed to deliver at least 700 vehicles under the FedEx purchase order by December 1, 2020, then Ryder "shall be entitled to declare the balance of the principal amount under the Promissory Note (less any Vehicle Credits) as immediately due and payable." *Id.*

61.     Chanje did not meet its obligations and deliver the 700 vehicles under the FedEx purchase order, therefore the $3.5M Purchase Order became immediately due and recoverable.

62.     Defendants have accordingly breached their obligations under the Side Letter Agreement and $3.5M Promissory Note, and are in default under that Note.

63.     Paragraph 2.1 of the $3.5M Promissory Note titled "Payment" specifically stated that "[t]he full amount of the Loan shall become immediately due and payable upon the Noteholder demanding payment thereof in accordance with the terms and conditions of that certain Letter Agreement, dated November 13, 2019."  $3.5 Promissory Note ¶ 2.1.  Ryder has demanded this payment and Chanje has not complied, again breaching its obligations under the Note.

64.     Because the Side Letter Agreement specifically incorporated the $3.5M Promissory Note, and that note was defaulted due to Chanje not meeting the obligations as set in the Side Letter, the Side Letter Agreement thereby also incorporated the same submission to jurisdiction provisions as cited previously.

65.     Defendants have failed to pay the principal amounts of the Two Promissory Notes upon their coming due.

---

[1]     The FedEx purchase order was entered into in November 2018.

11

66.     Ryder has demanded payment and has attempted to collect the outstanding principal balance from Defendants in the amount of $3,770,000.  Defendants have not paid these amounts.

67.     Indeed, Defendants are fully aware of the requirement to pay these indebted amounts because they have even requested forbearance from Ryder, as will be explained in more detail below.

68.     Defendants even committed to pay some of the outstanding balance by the end of January 2021, but that promise was not fulfilled either.

69.     Defendants' failure to pay the amounts due are clear defaults and breaches of the Two Promissory Notes and Side Letter Agreement.

**E.  Defendants' Material Misrepresentations and Attempt to Gain Forbearance**

70.     Defendants have promised to deliver vehicles to Ryder, for which Ryder paid a significant deposit.  To forestall action by Ryder, the Defendants made additional promises to Ryder concerning the delivery of vehicles.  Defendants knew at the time of these promises that they could not deliver the vehicles to Ryder.  Moreover, Defendants are indebted to Ryder in the principal amount of $3,770,000, and they have repeatedly represented through e-mail and phone conversations that they are responsible for, and will pay, those obligations.

71.     Knowing that they are in default of their obligations, the Defendants have requested Ryder to forbear from exercising its rights and remedies under the Two Promissory Notes.

72.     The Defendants have also misrepresented to Ryder that if Ryder would forbear from exercising its rights and remedies under the Two Promissory Notes for a period of time, that Chanje would make payments toward its indebtedness to cure the outstanding balance and defaults.

73.      Specifically, the Defendants represented that they would make a payment of $270,000 on or before January 31, 2021, and then the full amount of $3,5000,000 on or before June

30, 2021, and asked that Ryder forbear exercising its rights under the defaults.

74.     As a direct result of the Defendants misrepresentations that it would make the foregoing payments, Ryder relied upon these misrepresentations to its detriment and did, in fact, forbear exercising its rights.

75.     Defendants induced Ryder to act on their misrepresentations and forbear legal action against Defendants, while Defendants knew or should have known that they had no intention of making the payments they promised.

**F. Breaches of Vehicle Agreement and Joinder Agreement**

76.     In addition to breaching and defaulting on the Two Promissory Notes and accompanying Side Letter Agreement, as well as their false representations after those defaults, Defendants have also breached multiple agreements between the parties as a result of their actions throughout this same time period.

77.     On February 7, 2020, Ryder, through undersigned counsel, sent a demand letter to Defendants putting them on notice of the breach of the Vehicle Agreement and the Joinder Agreement.  *See* Letter from Hogan Lovells to Chanje, et al. (Feb. 7, 2020), attached hereto as Exhibit G.

78.     Ryder stated that the Defendants breached the Vehicle Agreement by: (1) failing to provide vehicles as promised; (2) failing to provide the date of manufacture upon acceptance of Ryder's Purchase Orders; and (3) failing to provide adequate insurance.  Ryder maintains those positions and re-asserts them herein.

i.      Breach of the Vehicle Agreement By Failing to Deliver Vehicles
        and Failing to Provide Date of Manufacture Upon Acceptance of Purchase Orders

79.     The Vehicle Agreement and Joinder Agreement require that Defendants deliver the vehicles contracted for and provide a date of manufacture upon acceptance of purchase orders.

80.     The Vehicle Agreement contains multiple provisions that require vehicles ordered actually be delivered.  *See, e.g.*, Ex. A at E-1 ("Chanje warrants that physical delivery of each Chanje Vehicle (i) shall be rightful."); *see also Id.* at E-2 (stating full payment is not due until after "delivery of the applicable Chanje Vehicle").

81.     Additionally, Chanje was required to communicate the date of manufacturing to Ryder in writing each time a Purchase Order was accepted.  Section 1.2 of Exhibit E to the Vehicle Agreement states:

> Ryder will have the right to cancel any order for any Chanje Vehicle so long as a cancellation notice is received in writing by Chanje not less than sixty (60) days prior to the commencement of the manufacturing of that vehicle. Such date for the commencement of manufacturing will be communicated to Ryder in writing upon acceptance of the Purchase Order.

*Id.* at Ex. E-1.

82.     Chanje never communicated the date at which it commenced manufacturing for any of Ryder's accepted Purchase Orders.  This failure is a clear breach of Section 1.2 of the Vehicle Agreement.

83.     Further, because the Joinder Agreement states that by signing the Joinder Agreement, FDG "will be deemed to be a party to the Chanje Agreement in accordance with the terms of the Chanje Agreement and shall have all of the rights and obligations of Chanje as fully as if it had executed the Chanje Agreement," then FDG has breached Section 1.2 of the Vehicle Agreement as well as the Joinder Agreement.

ii.     Breach of Section 12 (Insurance) of the Vehicle Agreement

84.     Section 12 of the Vehicle Agreement required that "[p]rior to the delivery of the first Chanje Vehicle into the United states, each Party will obtain and keep in force during the Term: (a) Commercial General Liability insurance" in the specific amounts outlined in Section

12.1.  Ex. A at 20.

85.     Section 12 of the Vehicle Agreement also required that "Chanje will obtain and keep in force during the Term and for one (1) year thereafter products liability insurance to cover the Chanje Vehicles, Chanje Vehicle Parts, and Chanje's obligations in connection with those materials" in the specific amounts outlined in Section 12.2.  *Id.*

86.     Section 12 further mandated that "[u]pon Ryder's request, "Chanje shall provide Ryder with proof of all such insurance, redacted for proprietary information such as premiums, copies of all such policies, and evidence of the payment of the premiums therefor."  *Id.*

87.     Defendants breached Section 12 of the Vehicle Agreement because they did not provide Ryder with any such information, and upon information and belief, did not obtain any of the requisite insurance as necessitated by the Vehicle Agreement.

88.     On October 31, 2019, Ryder sent a Notice of Breach of Vehicle Service and Parts Distribution, pursuant to the notice requirements in Section 14 of the Vehicle Agreement, notifying Chanje that it was in "material breach of and h[as] failed to perform your obligations under Section 12 (Insurance) of the Agreement. We hereby demand that you provide us with proof of insurance as required under the terms of the Agreement by no later than November 15, 2019."  Letter from Rick Mohr to Legal Department of Chanje Energy, Inc. (Oct. 31, 2019), attached hereto as Exhibit H.

89.     Chanje has never provided proof of insurance to Ryder and continues to be in breach of the Vehicle Agreement by its failure to obtain the proper insurance.

90.     Indeed, Chanje's General Counsel, Scott Griffin, admitted via e-mail dated July 10, 2020 that Chanje has violated Section 12 (Insurance) and other provisions of the Vehicle Agreement.  He stated: "Chanje cannot currently meet the heavy burden imposed by the original

contract." E-mail from Scott Griffin to Rich Mohr, et al. (July 10, 2020, 4:31 PM), attached hereto as Exhibit I.

91.     Further, because the Joinder Agreement states that by signing the Joinder Agreement, FDG "will be deemed to be a party to the Chanje Agreement in accordance with the terms of the Chanje Agreement and shall have all of the rights and obligations of Chanje as fully as if it had executed the Chanje Agreement," then FDG has breached the Vehicle Agreement and the Joinder Agreement by not obtaining the proper insurance.

92.     Chanje and FDG must indemnify Ryder for the foregoing breaches of the Vehicle Agreement pursuant to Section 11:

> General. To the fullest extent permitted by law, each Party shall defend, indemnify, and hold harmless the other Party and its members, directors, officers, employees, agents, representatives, and customers from and against all third party claims arising out of or resulting from: (a) any actual or alleged breach by it of any of its obligations, representations or warranties under this Agreement . . . . For purposes of this Agreement, "defend" means to hire, manage and pay legal counsel together with all court or administrative costs, expert and consulting fees, litigation expenses (such as document management, retention and duplication), alternative dispute resolution expenses, and similar costs associated with managing, handling or resolving claims.

*Id.* at 19.

## COUNT I

### (Breach of Contract Claim Against Both Defendants for Breaching The Overpayment Promissory Note )

93.     The allegations in paragraphs 1 through 92 above are incorporated herein by reference as though fully set forth herein.

94.     As set forth above, Ryder and Defendants are Parties to the Vehicle Agreement and Joinder Agreement, as well as parties to a valid contract in the form of the Overpayment Promissory Note.

95.     Under the Overpayment Promissory Note, Defendants agreed to pay their indebted

amounts when they became due.

96.     The Defendants failed to make the payments required under the Overpayment Promissory Note, and their failure to make that payment constituted a breach and default of the Note.  The principal became immediately due upon their default, and, despite Ryder's demand for payment, Defendants have failed to pay the remaining amount due of $270,000 to Ryder, constituting a further breach of Defendants' contractual obligations in the Note.

97.     Pursuant to the Overpayment Promissory Note, Defendants also have an obligation to indemnify Ryder of the expenses incurred in obtaining judicial relief as a result of their breaches.

98.     Ryder was damaged as a direct result of Defendants' breaches of their contractual obligations under the Overpayment Promissory Note.

WHEREFORE, Ryder respectfully requests that the Court enter judgment against Defendants for breach of contract under the Overpayment Promissory Note, award Ryder damages and prejudgment interest, plus standard costs and interest, award Ryder attorneys' fees pursuant to the Overpayment Promissory Note and indemnity provisions, and grant Ryder any further relief the Court deems just and appropriate.

## COUNT II

**(Breach of Contract Claim Against Both Defendants for Breaching The $3.5M Promissory Note and Side Letter Agreement)**

99.     The allegations in paragraphs 1 through 92 above are incorporated herein by reference as though fully set forth herein.

100.     As set forth above, Ryder and Defendants are Parties to the Vehicle Agreement and Joinder Agreement, as well as valid contracts in the form of the $3.5 Promissory Note and the Side Letter Agreement.

101.     Under the $3.5M Promissory Note, Chanje agreed to pay its indebted amounts

when they became due.

102.    Chanje failed to satisfy the condition of payment, and similarly the principal of the Note became due upon its default.  Chanje has failed to pay the $3.5 million due to Ryder, constituting a further breach of Chanje's contractual obligations in the Note.

103.    Chanje has also breached the Side Letter Agreement which specifically incorporated the $3.5M Promissory Note.

104.    Pursuant to the $3.5M Promissory Note, Chanje also has an obligation to indemnify Ryder of the expenses incurred in obtaining judicial relief as a result of its breaches.

105.    Ryder was damaged as a direct result of Defendants' breaches of their contractual obligations under the Vehicle Agreement, Joinder Agreement, and the $3.5M Promissory Note and the Side Letter Agreement.

WHEREFORE, Ryder respectfully requests that the Court enter judgment against Defendants for breach of contract under these agreements, award Ryder damages and prejudgment interest, plus standard costs and interest, award Ryder attorneys' fees pursuant to the $3.5M Promissory Note and indemnity provisions, and grant Ryder any further relief the Court deems just and appropriate.

## COUNT III

**(Breach of Contract Claim Against Both Defendants for Breaching Vehicle Agreement and Joinder Agreement)**

106.    The allegations in paragraphs 1 through 92 above are incorporated herein by reference as though fully set forth herein.

107.    As set forth above, Ryder, Chanje, and FDG are Parties to valid contracts in the form of the Vehicle Agreement and the Joinder Agreement (the latter of which joined FDG as a party to the Vehicle Agreement).

108.    Under the Vehicle Agreement and Joinder Agreement, Defendants were obligated to take specific actions to complete the transactions with Ryder.

109.    Defendants had a clear duty to actually deliver the vehicles or products/services that Ryder paid for pursuant to its Purchase Orders.  However, Defendants failed to meet its delivery dates multiple times and failed to deliver most of its vehicles altogether to this day. Defendants also failed to reimburse the remaining initial deposit on the 100 vehicles that were not delivered and failed to reimburse the overpayment of the remaining balance payment for 22 vehicles that were delivered.  Therefore Defendants breached all obligations to deliver its products and return payments to Ryder.

110.    Second, Defendants were required by Section 1.2 of each Exhibit to the Agreement regarding services (e.g., Exhibit E regarding the acquisition of vehicles) to provide the date at which Chanje commenced its manufacturing after the acceptance of a Purchase Order.  Defendants never provided any such date and as a result were in clear breach of this obligation under the contract.

111.    In addition, the Vehicle Agreement contained clear requirements for Chanje to obtain several types of insurance policies at specified amounts per policy.  Chanje did not provide Ryder with proof of this insurance prior to the delivery of the first vehicle, or up until this date. This is another clear breach.

112.    FDG's failure to ensure any of these obligations were met is further a breach of the Joinder Agreement, which required FDG to satisfy any of Chanje's obligations under the Vehicle Agreement as if FDG was a party to the Vehicle Agreement from inception.

113.    Pursuant to the Vehicle Agreement and the Joinder Agreement, Defendants also have an obligation to indemnify Ryder of the expenses incurred in obtaining judicial relief as a

result of their breaches of these agreements.

114.    Defendants have breached both the Vehicle Agreement and the Joinder Agreement in multiple ways.  Ryder has suffered damages as a direct result of Defendants' breaches.

WHEREFORE, Ryder respectfully requests that the Court enter judgment against Defendants for breach of contract under these agreements, award Ryder damages, plus costs and interest, award Ryder attorneys' fees pursuant to the Vehicle Agreement and Joinder Agreement and indemnity provisions, and grant Ryder any further relief the Court deems just and appropriate.

## COUNT IV

### (Fraudulent Misrepresentation Against Both Defendants)

115.    The allegations in paragraphs 1 through 92 above are incorporated herein by reference as though fully set forth herein.

116.    Chanje and its parent company and guarantor FDG made false statements regarding a material fact, specifically that they would deliver certain vehicles to Ryder, knowing they could not do so.

117.    Defendants also made false statements regarding a material fact by promising to make certain payments towards their indebtedness after they defaulted on the Two Promissory Notes, knowing they could not do so.

118.    Defendants also misrepresented to Ryder that if Ryder would forbear exercising its rights under the Two Promissory Notes to recover the defaulted debt, Defendants would make payments in 2021, including one by January 31, 2021, knowing they could not make such payments.

119.    Defendants made these false misrepresentations to Ryder in Miami, Florida, via several modes of communication, including, e-mail, phone calls, and even a draft forbearance agreement.

20

120.     As set forth above, Defendants made these false misrepresentations while they knew or should have known that they would not: (1) make deliveries of the vast majority of vehicles; or (2) make the payments toward the debt; but they made those representations with the intent to induce Ryder into forbearing its rights.

121.     Ryder did forbear seeking relief for the defaulted Two Promissory Notes and the breach of the Side Letter Agreement because of Defendants' misrepresentations.

122.     Ryder suffered damages by acting in reliance on the representations that Defendants would make payments toward the debt, and by consequentially forbearing their initiation of proceedings to enforce their rights to collect that debt.

WHEREFORE, Ryder respectfully requests that the Court enter judgment against Defendants for fraudulent misrepresentation, award Ryder damages, plus fees, costs and interest, and grant Ryder any further relief the Court deems just and appropriate

## COUNT V

### (Unjust Enrichment Against Both Defendants)

123.     The allegations in paragraphs 1 through 92 above are incorporated herein by reference as though fully set forth herein.

124.     In the alternative to Ryder's breach of contract claims, Ryder also asserts that Defendants have been unjustly enriched by their actions.

125.     Ryder paid the Defendants for the delivery of 125 vehicles.  Only 25 such vehicles were delivered and, despite Ryder's demand, Defendants have retained the deposit on the 100 vehicles that have not been delivered and the overpayment on 22 vehicles that have been delivered.

126.     Moreover, Ryder provided the forbearance requested by Defendants in exchange for Defendants meeting their obligations under the Two Promissory Notes and Side Letter

Agreement to the benefit of Defendants, for the purpose of providing Defendants a period of time to cure the defaults under the Two Promissory Notes.

127.    Defendants specifically requested Ryder's funds and forbearance, which inured to their direct and substantial benefit.

128.    Ryder provided these benefits to Defendants in exchange for Defendants' promise to make payments toward the indebtedness, specifically in the amount of $270,000 on or before January 31, 2021, and $3,500,000 on or before June 30, 2021.

129.    Defendants had knowledge of the benefit of Ryder's funds and forbearance and accepted those benefits, confirming through numerous communications via e-mail and phone that Defendants intended to pay adequate value for those benefits.

130.    Nonetheless, Defendants did not make the promised payments, and already missed the January 31, 2021 payment.

131.    It would be inequitable for Defendants to retain the benefit of Ryder's forbearance – in addition to retaining the $3,770,000 of Ryder's money that it still has not returned – while not paying adequate value for these benefits.

WHEREFORE, Ryder respectfully requests that the Court enter judgment against Defendants for unjust enrichment, award Ryder damages and prejudgment interest, plus fees, costs and interest, and grant Ryder any further relief the Court deems just and appropriate.

Dated: March 17, 2021                    Respectfully submitted,

/s/Marty Steinberg
Marty Steinberg
Florida Bar No. 187293
Paige Comparato
Florida Bar No. 1002942
marty.steinberg@hoganlovells.com
paige.comparato@hoganlovells.com

**HOGAN LOVELLS US LLP**
600 Brickell Avenue, Suite 2700
Miami, Florida 33131
Tel: 305-459-6500
Fax: 305-459-6550